## UNITED PROPERTIES CO. OF CALIFORNIA et al. v. KIBBE.

(Circuit Court of Appeals, Ninth Circuit.  August 1, 1921.)

No. 3192.

Corporations ⊂⇒406(1)—Certificate for delivery of bonds to be issued held authorized.

A certificate issued by defendant corporation, by which it agreed to deliver to plaintiff 13 of its first mortgage bonds, of $1,000 each, to be secured by trust deed then in preparation, *held* duly authorized, and binding on defendant, and to sustain an action by plaintiff for damages for nondelivery of the bonds

In Error to the District Court of the United States for the Second Division of the Northern District of California; William C. Van Fleet, Judge.

Action at law by Mary Ellen Kibbe against the United Properties Company of California. Judgment for plaintiff, and defendant and Albert Hanford and others, trustees acting in behalf thereof, bring error. Affirmed.

The defendant in error commenced this action in the court below against the defendant the United Properties Company of California, to recover damages in the sum of $13,000, the alleged value of certain bonds, with interest and costs of suit—the complaint alleging in substance that on the 15th day of February, 1912, the defendant company, for a valuable consideration, undertook and agreed in writing to deliver to Ira M. Condit and the plaintiff as joint owners, or the survivor of them, or order "thirteen of its first mortgage and collateral trust 5 per cent. 50-year sinking fund gold bonds of the denomination of $1,000 each, with all interest coupons attached, said bonds to be issued under and secured by a deed of trust dated January 1st, 1911, then in course of preparation by the said defendant, and so to be delivered under, as, and when said bonds might be certified, issued, and ready for delivery; a true and correct copy of which agreement, marked 'Exhibit A'" was annexed to and made part of the complaint, and is as follows:

"Bond Certificate.

"Number 660.

"For First Mortgage and Collateral Trust Five Per Cent.    Par Value of Bonds, $13,000.00 Fifty year sinking fund gold bonds.

"The United Properties Company of California.

"The United Properties Company of California, a corporation organized and existing under the laws of the state of Delaware, for value received, promises to deliver to Ira M. Condit and Mary Ellen Kibby, as joint owners, or the survivor of them, or order, upon the surrender of this certificate duly indorsed, 13 of its 'First Mortgage and Collateral Trust Five Per Cent. Fifty Year Sinking Fund Gold Bonds,' of the denomination of one thousand dollars ($1,000.00) each with all interest coupons thereto attached, said bonds to be issued under and secured by the Deed of Trust in preparation dated January 1, 1911, made by said the United Properties Company of California, and to be delivered hereunder as and when the said bonds may be certified and ready for delivery.

"In witness whereof, said the United Properties Company of California has hereunto caused its corporate name to be signed and its corporate seal to be

⊂⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

affixed by its president or one of the vice presidents and treasurer or assistant treasurer thereunto duly authorized, this 15th day of February, 1912.

"The United Properties Company of California.
"W. K. Alberger, Vice President.
"A. G. Rayecraft, Asst. Treasurer."

Indorsed on certificate:

"Interest from January 1 to July 1, 1911, amounting to $325, paid July 1, 1911, $25 Nov. 18, 1911, $300.          A. G. Rayecraft, Asst. Treasurer.

"Interest from July 1, 1911, to January 1, 1912, amounting to $325 paid Jan. 2, 1912.          A. G. Rayecraft, Asst. Treasurer.

"Interest from January 1, 1912, to July 1, 1912, amounting to $325 paid July 1, 1912.          A. G. Rayecraft, Asst. Treasurer.

"Interest from July 1, 1912, to January 1, 1913, amounting to $325 paid January 2, 1912.          A. G. Rayecraft, Asst. Treasurer."

The complaint alleged the death of Ira M. Condit and that the plaintiff was his daughter and had become the sole owner and holder of the agreement; that September 13, 1915, the plaintiff demanded that the defendant execute to her the bonds as required by the agreement and execute the trust deed therein mentioned, all of which the defendant refused to do, and further alleged that neither the said trust deed nor the said bonds have ever been executed; that at the time of the making of the said demand the plaintiff tendered to the defendant the said agreement and offered to surrender it upon the execution and delivery by it to the plaintiff of the said bonds; that had the bonds been executed and delivered to the plaintiff as required by the agreement and the said trust deed been executed as so required the bonds would have been of the value of $13,000 in gold coin, and that by reason of the matters alleged the plaintiff has been damaged in that amount of money.

The defendant company put in issue the substantial allegations of the complaint, and also set up certain affirmative defenses, and after a trial of the issues by the court—a jury having been waived—judgment was entered as prayed for.

R. P. Henshall, of San Francisco, Cal., for plaintiffs in error.

Keyes & Erskine, of San Francisco, Cal., for defendant in error.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

ROSS, Circuit Judge (after stating the facts as above). We see no merit in any of the contentions on the part of the plaintiff in error. At best they are purely technical and mainly directed to the alleged insufficiency of the complaint, to which there was no demurrer for uncertainty or on any other ground. What according to the complaint, the defendant to the action agreed to do, and what, according to the record of the trial, it did not do, was to deliver to the promisees the bonds described in the complaint, to the alleged damage of the plaintiff in the action in an amount which the trial court found was actually sustained.

The contention that the certificate upon which the action was based was issued without authority, and that there was never any subsequent ratification thereof, is clearly shown by the record to be without any valid foundation. The record shows that the plaintiff in error is a Delaware corporation, and was organized under the laws of that state by R. G. Hanford, W. S. Tevis, and Frank M. Smith as a holding company of stock in other corporations held by them; that accordingly, at a special meeting of the board of directors of the plaintiff in error, held February 24, 1911, at its office in the city of San Francisco, Cal., duly called, and at which all of the eight directors except one were present, this, among other resolutions, was adopted. to wit:

"Resolved, that First Vice President W. S. Tevis and Vice President R. G. Hanford be and they are hereby authorized and empowered, on behalf of this company, to enter into negotiations for the purpose of acquiring such electric lighting and distributing or other plants or properties and franchises as they may think desirable, or to acquire shares of stock in corporations owning or controlling such plants or properties or franchises."

The record shows that the president of the company thereupon laid before the board of directors a communication from R. G. Hanford, wherein he offered to transfer to the plaintiff in error certain shares of the capital stock of certain named corporations, at and for the price of $145,346,730, "for and in exchange for all of said stock," reads the communication of Hanford,

"And as the consideration for the delivery thereof to you, I hereby offer to accept from you the following amounts of the common and preferred shares of the capital stock of your company, the United Properties Company of California, and the following amounts of your first-mortgage bonds and convertible debenture bonds, all of which must be delivered as fully paid, to wit:

| | |
|---|---|
| First. 575,792 shares of the fully-paid common stock of your company, having a par value of | $ 57,579,200 |
| Second. 336,014 shares of the fully paid preferred stock of your company, having a par value of | 33,601,400 |
| Third. 10,411 of the fully-paid first mortgage bonds of your company, having a par value of | 10,411,000 |
| Fourth. 43,755.15 of the fully-paid Convertible Debenture bonds of your company having a par value of | 43,755,130 |
| Total | $145,346,730 |

"As a further consideration for this exchange, I must require you to enter into an agreement with me whereby you shall undertake at any time on or before July 1, 1911, to exchange with any of the stockholders of the Bay Cities Water Company, whose stock shall not be transferred and delivered to you by me, the following amount of your shares of stock for shares of stock of the Bay Cities Water Company owned by them, respectively, that is to say:

"For each $10 par value of the shares of the common stock of The Bay Cities Water Company received by you, you shall issue in exchange therefor $3 par value of your common stock, $1 par value of your preferred stock, and $1 par value of your convertible debenture bonds.

"If this offer is accepted by you, the exchange of stock herein contemplated shall be made and consummated within 30 days from the date of such acceptance. If your company is unable, within said time, to issue and deliver to me the permanent first mortgage bonds or convertible debenture bonds of your company, hereinabove mentioned, I agree to accept from you, in lieu thereof, certificates for such bonds authorized and issued by you, which certificates shall provide that the holders thereof shall be entitled to receive from you the said first mortgage bonds and convertible debenture bonds as soon as the same are executed, issued, and ready for delivery, together with all interest coupons attached to said first mortgage bonds, entitling the holder thereof to interest at the rate of five per cent. per annum from and after the 1st day of January, 1911.

"Yours truly,                          [Signed]   R. G. Hanford."

The record shows that, after a full discussion of that offer and of the value of the shares of stock in the various corporations offered by Hanford, it was, upon motion duly made and seconded, and carried by the unanimous vote of all of the directors of the defendant in error except Hanford, who did not vote:

"Resolved, that the stocks offered by Mr. R. G. Hanford in his communication, a copy whereof is hereinafter spread upon these minutes, are of a value of not less than $145,346,730.

"Further resolved, that the said offer be, and the same is, hereby accepted, and that the proper officers of this company be, and they are, hereby authorized and directed to issue such shares of stock, bonds, and convertible debenture bonds of this company, and to do all such other acts and things as may be necessary to effect the said exchange.

"Further resolved, that a copy of said communication of R. G. Hanford be spread upon the minutes of this meeting."

Mr. Tevis, the vice president of the plaintiff in error, was questioned, and answered, among other things, as follows:

"Mr. Erskine: Q. Now, Mr. Tevis, did Mr. Hanford deliver to the United Properties Company within 30 days from February 24, 1911, the certificates of stock which he agrees to deliver in offer No. 1? A. I believe that he did; I cannot say positively he did so within 30 days, but my impression is that he did; that is my best recollection.

"Q. Were the certificates for bonds, which were issued to him for the shares of stock which he delivered, issued to him before or after he delivered the shares of stock to it? A. I cannot answer that question. It seems to me that the certificate book would be the best evidence of that. My impression is that the certificates were delivered after he delivered the stocks and bonds.

"Q. Now, I call your attention to the fact that the original certificates were dated February 16, 1911, while this meeting was held on February 24, 1911. Now, isn't it a fact, Mr. Tevis, that while they were filled out and prepared on February 16, 1911, they were not delivered to him until after he made the delivery of stocks? A. I believe that is correct. I would like to alter my testimony in one particular, with reference to the delivery of the stocks and bonds, that he was supposed to have made. There were certain stocks, preferred and common shares of stocks in the traction company, that he agreed to deliver.

"Q. Let me interrupt you for a moment. You are referring now to offer No. 2. I am only asking you about offer No. 1. A. Probably that is so.

"The Witness (continuing): The United Properties Company received and kept the shares of stock which Mr. Hanford delivered to it, and I believe they still have them. The certificate book of the United Properties Company, which I have, is the first book kept by it. Certificates Nos. 45, 46, 47, and 48, shown me, I should say were certificates which were part of the certificates issued to Mr. Hanford in return for those stocks, and they were included in the 10,411 certificates, for $1,000 apiece, that were issued to him; that is my impression. I believe that number was issued to him.

"The Court: Q. When you say that number, you are speaking now of the four you have just shown him, or of the 10,411?

"Mr. Erskine: The 10,411 for $1,000 each; that would make $10,411,000.

"Mr. Henshall: Will you direct Mr. Tevis' attention to the fact that you are dealing exclusively with offer No. 1?

"Mr. Erskine: Yes; I have not referred to offer No. 2 at all.

"The Witness (continuing): Interest was paid upon the certificates by the United Properties Company and the directors knew that the company was paying that interest. When any certificates of the original issue were surrendered and new ones issued, interest was paid on the new issue and the interest was paid to and including January, 1913. The books from which these certificates were issued, and to which they were returned when they were surrendered, were kept in the office of the company, and the directors knew they were kept there. I never heard of any resolution adopted by the directors of the United Properties Company disaffirming or disapproving of the issuance or reissuance of any of these certificates. I was a stockholder in the company. I can identify one of the triplicate originals of the minutes of

the stockholders' meeting of the United Properties Company, and this book is a triplicate original of the minutes of the stockholders' meeting of the company."

The record shows that Hanford delivered to the plaintiff in error the shares of stock specified in his accepted proposition, receiving from the latter in return, among other things, certificates for 10,411 first mortgage bonds, of $1,000 each; that those certificates were subsequently transferred by Hanford to various persons, such transferees thereafter surrendering them to the plaintiff in error, receiving therefor similar certificates in their own names. The certificate held by the defendant in error, upon which this action was based, was one of them.

The transactions last referred to occurred during the years 1911, 1912, and 1913, and the record shows that interest was paid by the plaintiff in error on the certificates issued to Hanford, and on the reissued ones, as above stated, including that of the defendant in error. Not only do the records of the board of directors of the plaintiff in error disclose these things, but the record in the present case shows that on the 5th day of December, 1911, at a meeting of the stockholders of the plaintiff in error, at which a large majority of the stock was represented, this resolution was unanimously adopted:

"Resolved, that all the acts, contracts, and proceedings of the officers, directors, and committees of this corporation since the first meeting of the incorporators of this corporation, which meeting was held in the city of Wilmington, state of Delaware, on the 31st day of December, 1910, to this date, be and they are hereby in all respects ratified, confirmed, and approved, and declared to be the acts and deeds of this corporation."

Upon such a record we think it is idle to contend, either that the certificate in question was not authorized or was not ratified. That none of the bonds called for by the certificate were delivered is conceded.

The judgment is affirmed.